Case 14-3306, Collins Inkjet Corporation v. Eastman Kodak Company. Oral argument, 15 minutes per side. Mr. Schildkraut for the appellant. Good morning. Mark Schildkraut, representing the appellant and defendant, Eastman Kodak. If Kodak had met with any success whatsoever in its pricing strategy, Collins could have responded by lowering its price of ink to retain its customers. The antitrust laws are intended to foster just that kind of behavior. Instead of offering competitive discounts, Collins sought and received the protection of the court so it did not have to discount. The Supreme Court has held on multiple occasions that if the conduct is pricing behavior, the plaintiff loses unless the defendant's price is below cost. It's the plaintiff's burden to prove that, and Collins didn't meet that burden. Every time the lower courts have held there is an exception to the price-cost rule, the Supreme Court has held there is no exception. Following the Supreme Court decisions, in mixed sand, this Court said that the antitrust laws are not intended to protect the plaintiff that could have protected itself by lowering its price. Applying the methodology in mixed sand, we showed that Collins could have lowered its price profitably and retained about 78 percent of its customers if both parties had been engaged in discounting. To understand why Collins You mean that a party can price below cost as long as some of the competitors are able to still compete? Below the defendant's cost? Is that what you're asking? That's what I'm asking. Yes. Our argument is that you should use both the defendant's cost and the plaintiff's cost in doing the analysis. So your argument is that's not a violation to do that? It's not a violation. You can price below your own cost in order to compete maybe with less efficient products and thereby, oh, you're saying but just because they're not successful, then it's not a violation? Is that the idea? So first, as far as below cost is concerned, there is no evidence in this record. I understand, but you're saying that's not the issue. The issue is whether Collins can undercut, whether Kodak is pricing below cost. I'm hypothesizing that they're doing it below cost. If Kodak was pricing below cost, it would have been plaintiff's burden to prove that. And if they had proved it, it would be anti-competitive. If they had proved that it was below cost. Right. We're just talking theoretically now. Yeah. We're talking theoretically. If it had been below cost, I would still say there would have been no violation of law, but that's just theoretical. Let me explain why there would have been no violation. Even if Kodak's discount had run the price down below the cost of producing the item? Yes. Even if Kodak had done that, there would have been no violation here under NXSAN. Now, there is no evidence of that. I think that's the most important. I know, but let's just make sure we understand what the lay of the land is. I think that's what you were asking, Judge Rogers. But on that same issue, and you said that if Kodak prices below its own cost, it's not anti-competitive. If Kodak is in a position to subsidize the market to get below its cost, is it competitive if Kodak then prices the product below its own cost and also below Collins' cost to produce the item? If both those things had happened, clearly Collins would have satisfied the price-cost test. Okay. NXSAN, I think, is the key decision in this circuit. In NXSAN, there is no discussion of whether the defendant has gone below cost. What the court said was that NXSAN could have discounted its own price and that there is no protection under the antitrust laws if NXSAN could have competed. The courts have used two different standards. There's the ortho standard, which is the plaintiff's cost, which seemed to be followed in NXSAN. More courts have used the defendant's. The reason we think here that you should use both is because of the all-rational customer test. What the all-rational customer test is asking is what are rational customers going to do  If Kodak was lowering its price somehow and Collins could lower its price as well and would rationally do so because it was profitable for Collins to lower its price, what we are saying is that 78% of the customers, if both parties had discounted, would not have switched. And because Collins would, under normal competitive circumstances, have done that, then there can't be any violation of law. So you're saying that most courts have looked at what in this case would be Kodak's price cost rather than Collins. Yeah. If you assume that we agree with that, even though you disagree with that, then how do you win? Because there is no evidence in the record that Kodak was pricing below its cost. And it is the burden of proof of plaintiff to show that Kodak was pricing below cost. The other reasons we use the standard we use is because that was what the complaint said. The complaint said that Collins couldn't match these prices, and it could. So that's number one. The all-rational customer test is number two. Why shouldn't we take the differential between the prices that are charged to the two parties for refurbishing and factor that into the price-cost attribution of the inks? I think it should be. It should be. It should be, yes. And that's what the attribution test is all about. You take the differential. You attribute all of it to the ink. And you attribute all of it as a discount. Discount. And then you ask the question. Does it cost them that much to produce it? That's right. Or you ask the question, can Collins print it? And is that economically any different from just taking the price? I don't want to call them monopoly rents, but presumably you can charge more because they're the only ones who are selling this stuff, the refurbishment. Well, I won't say right to that because that's one of our arguments on appeal, that they couldn't do that. Let's assume it. Assume you have something called quasi-monopolized market. It's not a pure monopoly because if you charge a million dollars, I guess they would go and get a different printer or something like that. But to the extent that it has some monopoly money in there, it takes this money and uses it to offer ink for a much lower price. That's, in effect, what you're doing here, right? And that would be okay. Is that right? As long as we accept these assumptions about monopoly power. Right. As long as it passes the price-cost test. As long as it passes the price-cost test. But this is what I want to ask. If you can achieve economically the same thing, then why don't you just do that and not worry about this injunction? Are you with me? Or stated differently, how is this injunction really causing you any harm if you can instead figure out, and we've got accountants who can do this much more brilliantly than I can even state it, but it would be something along the lines of, let's figure out the economic effect of these different things. The district court is telling us to do it one way rather than the other way. We argue that it's economically the same because it is. The district court doesn't see that. So why don't we just price it according to the way that the district court says we can do it, which would mean that you would just have a high price for the refurbishment and use that money to lower your prices on the ink. Yes. And, in fact, we- That's what you're doing. My economist made that argument, that there is no economic difference, and that's why it's all pricing behavior. But going directly to your question, what this preliminary injunction does is, and the court said so, is it harms Kodak's reputation. That's number one, and it means that the court in Collins is running- It's hurt their reputation. Well, it's hurt because- You can't just say we disagree with every bit of it, but in order to comply, we're going to charge the same thing for ink regardless of- I mean, we're going to charge the same thing for refurbishing regardless of who's ink, but we'll lower the price of ink. The court didn't explain the harm to reputation, but I believe what the court meant was that Kodak was concerned that if it had no control whatsoever over the ink going into its printheads, that there could be damage that could be blamed on Kodak. So Kodak was trying to- Is that the only basis for saying that you're harmed by this injunction? No. So let me give you an example of another harm. So if someone came, if a customer came to Kodak and said to-and it's an ink customer-and it said to Kodak, I'm going to switch printers unless you lower the cost of refurbishment to me. Under this injunction, I don't think Kodak could do that. So Kodak can't compete. The injunction- Kodak can't let them switch printers? Switch to a competitor. Kodak wants to prevent them from switching to a competitor. The customer goes to Kodak and says, lower your price of refurbishment to me. You're just fighting the hypothetical then. I'm hypothesizing that there's something like a monopoly power over this, that there's cost restrictions on that. Sure. If you charge a million dollars to refurbish, they're going to get a different printer. They could buy a different printer for a million dollars. I'm saying within a range-I'm hypothesizing-within a range, they're stuck with these. But what I'm saying is under the injunction, at present prices, assume they're competitive prices, Kodak cannot lower its price for refurbishment to an individual customer who is threatening to go to the competition. That's what the problem is with this injunction. Well, but the injunction-I thought the injunction said you had to charge the same price to people regardless of what ink they're using, not regardless of something else. I don't-I am concerned that- What if we say that then? They're all happy. Well, but if it's Kodak's- We can just say in the opinion. If it's a customer- We understand that this means what it seems to mean. Sorry, Your Honor. I didn't mean to interrupt. If it's a customer that's using Kodak's ink and it lowers the price because the customer went to it and said, lower your price of ink or else, I think it's a prima facie problem because it's not allowed to lower its price to someone who's using Kodak ink. I see. So I don't think I would recommend to Kodak that they do something like that under those circumstances. Okay. Thank you. I wanted to get to another point. Your time has expired. Oh, I'm sorry. Thank you. Good morning. May it please the Court, Bill Markovitz on behalf of Collins Inkjet Corporation. I want to get to an issue that you raised, Judge Rogers, which is the exploitation of the market power in the refurbished market. You say it more nicely than I say. I've been immersed in this economics. The economist may not draw a distinction, but the law draws a major distinction between the exploitation of monopoly power in one market, just raising the price on refurbishment, or using that market power in another market, in this case, ink. Jefferson Parish, the Supreme Court, that's a huge distinction, and that's a distinction that's at issue here. They can raise their price on refurbishment. They can raise their price on refurbishment and use that money to lower ink prices across the board. Exactly. They can compete in ink. They can compete on the merits in the ink market. That's the competition that this injunction allows. There's nothing preventing them. Why can't they do economically the same thing? What would be the sense of if it's economically the same thing to have differential prices for refurbishment based on what ink you use, and the accountants could get it out and figure out that it's economically the same thing, what sense does it make for us to interpret the antitrust laws to say you can do it one way and you can't do it the other way? Here's the difference, Your Honor, and this gets to the Nixon case. If you're looking at a single product market, the antitrust laws generally say as long as you're pricing above cost, go to it. Discount. Compete on the merits because the consumer benefits. All right? That's not the case here. So it depends on whether the price is above market then. I mean is below price, is below cost. Kodak can compete in the ink market as long as they're above cost. It does depend if they're going to do it. Can they do it? I should have qualified my hypothetical by saying and they're doing it and they're meeting the price attribution test. Correct. Then why can't they do it? If they can do economically the same thing by raising, as you I think agreed, by raising their refurbishment costs across the board and then using the money that they get from that raising to reduce the ink costs, right, and thereby compete with Collins by lower cost ink, if they can do that, why can't they price it exactly the same but do it by means of having differential prices for the refurbishment? There's actually a huge difference. As long as they're meeting the price attribution test. Oh, well, and that's the huge difference. As long as they're pricing above cost. So you would agree that's okay then? I would agree that they can raise their price uniformly in the refurbished market and exploit their monopoly. The reason the cases generally allow that or the law allows that is because it will attract entry and it will be short term in any case. Whatever, but they can do that. They can do that. And then they can use that money to sell ink at one cent over cost. Yes, and here's why. Because the consumer benefits. My question is, what if there is an economically indistinguishable way of doing it, which is to do what you accuse them of doing in this case, which is to, let me think now, have a differential price for refurbishment based on what ink you use, all right? Let me explain the difference. And perhaps I can provide a concrete example. Let me provide an example from one of the defense experts' charts. We don't agree with his analysis, but I'll take his chart on 755 of the appendix, and I'll use a company, Bertelsmann, which was the ninth down out of 20. I'll round off his cost to the nearest $10,000. What he's saying in that chart is Bertelsmann is pricing, Collins is pricing its ink to Bertelsmann at $240,000 annually. Kodak is at $330,000. If we have competition on the merits, Collins is going to win because it's lower priced. But because of the refurbishment penalty of $220,000, now that customer has to pay $450,000 if they're going to use Collins or $330,000 if they're going to use Kodak. They're going to use Kodak. What's Kodak's response? You should compete. And I put compete in quotes there because it's not competition. What they're saying is you should lower. Your argument, but it doesn't answer my question. Well, here's how I'm about to answer your question, I hope, which is the competition they're talking about is that Collins should lower its price to average variable cost of $110,000. And then if you take that $110,000 and add on the penalty of $210,000, they're a little lower. They're at $320,000 and Kodak is at $330,000. They can keep that customer. That's not competition on the merits. That's the exploitation of market power that tying is a part of. They're allowed to exploit market power. No, they're not. No, they're not. That's a tying violation. They're exploiting market power every time they raise the price of a product that they have monopoly power over. Right. But there's a difference between exploiting market power in the refurbishment market or taking that and using that power. But they can do that by exploiting the power in the refurbishing market and taking that money and using it to subsidize their, as long as they don't go under the cost, subsidizing their ink. But there's a difference. Is that true or not? That is true. They can subsidize. So that's exploiting their market power. It's using the revenues from their market power. All right. Well, I'm going to use every time I say exploit, I mean using the revenues. There's a distinct difference, Your Honor, because the principle evil of tying that's set out in the case law is that you're using market power in one market to exploit another market or, as some of the cases say, to shelter an inferior or overpriced product. That's what you're doing when you're taking money that you have available to you from this, in my hypothetical, from this quasi-monopoly over refurbishment and using it to subsidize your ink production. In that case, in every situation where the Kodak drops its price to right above cost, who benefits? The consumer. And that's why it's allowed. Why shouldn't it be allowed? Because in this case, who benefits? Kodak. When Collins is forced to drop its price to keep customers because of this penalty, the only entity that benefits is Kodak. Consumer doesn't benefit. Collins can drop its price all day. And if that money is going by way of a penalty to Kodak, it's Kodak that's benefiting. I'm not talking about Collins dropping its price. I'm talking about the price that Kodak offers. I just want to ask a question. You can still answer that. But looking at Kodak's pricing policy, isn't it really a bundled discount rather than this not explicit tie that you talked about? Your Honor, no. It could be both. It could be viewed as a bundled discount. And there are a number of cases you may have seen in the brief where both bundling and tying allegations are made on the same set of facts. In fact, in antitrust law, it's often the case you may have Section 1 or Section 3 tying violation, attempted monopolization, monopolization, price discrimination, all based on the same set of facts. And what the case law says and what the commentators say is you analyze them under different structural requirements. You have the same set of facts, perhaps, and you can analyze it one way under a bundling claim under Section 2 and a different way under Section 1. In fact, under these facts, what result under the bundling discount thing and a policy, rather, and how does that affect Collins? If it were analyzed under bundling, the preliminary injunction should still be affirmed. And I'll explain why. Now, counsel has said there's no evidence in the record that Kodak is pricing below cost, and that's what they said in their reply with no citation. Kodak is pricing above cost. They are not by their own admission. Let me explain why. A number of times in their appellate briefs and in the court below, they make the argument Kodak is financially better off. Kodak is financially better off if the customers stay with Collins under the policy and don't switch. The only way that's possible is if they're pricing below cost under the attribution test. That may not be intuitively obvious, so let me explain with a little more detail. The attribution test says you take the penalty, or the differential, and you apply it to the competitive good, Inc. Apply it meaning subtracting it, and see if they're pricing below cost. The only way Kodak's argument is correct, that they're financially better off if the customer stays with Collins, is if they fail the attribution test under a bundling analysis. This isn't a bundling case. They're saying that analysis should apply, but even if you were to apply that analysis, the judgment of the district court should be affirmed on that basis. I'll provide an example. If Kodak is pricing at $10 and they have profit of $3, that means their costs are $7. The only way they're better off if the customer stays with Collins is if they can get more than their profit of $3. So let's assume it's $4 from the refurbishment penalty. If they can get $4 from the refurbishment penalty, fine, the customer stays with Collins, Kodak is better off. But if you apply the attribution test and take that $4 penalty, subtract it from the price of $10, then they're at $6, they're below cost. It works no matter what numbers you use. As a matter of math, as a matter of economics, as a matter of logic, that's another basis for affirmance here, which is that by their own admission, they are pricing below cost. If you include the differential that's attributable to that purchaser. If the policy is in effect. And legally, the question of whether the court below applied the proper law, with regard to applying plaintiff's pricing, there's no support. But if we went through that formula you just stated and it turned out that they were slightly above cost, they were at $7.01, then you have no claim. Is that right? That's not correct, Your Honor. We have no claim under a bundling analysis, but there's a distinction between a bundling analysis and a tying analysis. A tying analysis. I'm having trouble seeing how you have a claim if it's above cost. Because. It seems like it's inconsistent with antitrust doctrine, basically. No, it's not, Your Honor. Do you see the problem I'm having? I see the problem you're having, but let me see if I can. You can see it if it all depends on whether you're pricing above cost or not. And we can argue about whether this record adequately shows that for a preliminary injunction, et cetera. But you seem to be making a stronger argument that it doesn't matter as long as Collins is wealthy enough to deal with it. The argument I'm making is that under the law as it exists today, that bundling is analyzed one way and tying is analyzed a different way. And the recommendation, the Antitrust Modernization Committee came out with a recommendation, which was the basis for the Cascade Price-Cost Test. They recommended that it be applied in a bundling context and not in a tying context, and that's what the Cascade Court did. They applied it, a price-cost test, to bundling and not tying. The Velasas case, I wanted to address that because there's a quote in the reply, a parenthetical quote by Kodak for Velasas, quoting the opinion here, the cost-based standard is to be used for bundling and tying. That was Eastern District of Michigan Judge Tarnow. What he did, that quote is correct, but that's not what he did. What he did was he adopted a recommendation from a special antitrust panel that recommended that, yes, in bundling let's use a Cascade Price-Cost Attribution Test, but for tying we'll use a standard tying analysis of whether there's market power and whether there's some coercion. And that recommendation was adopted, and the order that issued drew that distinction. I don't know if this will help, but let me quote. Kodak cites a lot to Areda in paragraph 1758, and maybe this will get at the issue that you're raising where Professor Areda said, it might seem anomalous to conclude that conduct could be counted as exclusionary under a tying test under Section 1 of the Sherman Act, but not under a pricing test under Section 2. Of course, the structural requirements are different. That's the case here. The courts thus far, and there's even a split in the circuit on this point, on whether you need to apply a price-cost test to a bundling or whether above-cost activities can still be unlawful in the bundling context. Third Circuit endorses that view. Second and ninth apply the price-cost test. But there's no split in the circuit with regard to tying. Every court that has considered the issue says, we will apply perhaps price-cost test to bundling. We are not going to apply it to tying. You don't want us to apply it to tying? No, absolutely not, Your Honor. I'm sorry. Could you repeat the test that is applied to tying? The test that's applied to tying is you look as to whether there's market power. Market power and some coercion. Excuse me? Market power and some coercion of some sort. Yes, absolutely, Your Honor. And that's what the district court found here. He found it on the basis of evidence that was contemporaneous, that was candid evidence, that was internal evidence from Kodak's own analyses and e-mails, and the contrary evidence was primarily the context. This isn't your standard tying case where there's a contract saying you have to buy it from somebody. This is coercion that comes from a differential in the pricing of the refurbishment, right? That's correct. But even the cascade court. Does that make it more like bundling? It makes it. Not exactly like bundling, but it makes it a lot more like bundling, doesn't it? It makes it more like bundling, but, again, any court that has considered it has rejected a price-cost test even applied to nonexplicit tying. The cascade court applied price-cost test to bundling, but for the tying claim, reversing summary judgment, they said, look, there's a fair inference that a rational customer wouldn't be buying PeaceHealth's overpriced product absent the tie. So they applied a standard tying approach to the tying claim in that case, again, based on the same set of facts. Thank you, counsel. Thank you, Your Honor. Let me start with cascade. That's not what cascade did. Cascade said in a footnote that it thought that tying should be tested under the price-cost test, but since it had not been argued as to that point, it sent it back to the district court for further determination. But they were very explicit about that. There is no court of appeals tying case I know of that turns around and says in nonexplicit tying the price-cost test is not relevant. The argument that it's different if it's two products is incorrect under Linkline, the Supreme Court decision in Linkline, which was a two-product case. There is just every time a court of appeals has said this is different, the Supreme Court has said it is not different. Every time a court of appeals has said what is different, the Supreme Court? Well, so, for example, in Linkline. He wants me to identify my pronoun. Yes. So, for example, in Linkline, the court of appeals said this is different because it's a price squeeze and prices are going up in one market. And the Supreme Court said, no, it doesn't matter that there's two markets involved. It doesn't matter that prices are going up in one of the markets. No matter what the conduct is, the price-cost test has always been applied by the Supreme Court. I wanted to give a – and the problem below was that the district court just didn't use the test at all. He just – you know, we kept arguing for the test and the court just rejected it and didn't use it at all in any of this. And they did not meet their burden of proof. The argument you heard today as to why our price is below cost, codex price is below cost, is not an argument that was made below. It was not even an argument made in the briefs here. And I didn't follow it at all, so I can't give you anything more on that. Another reason that we suggest using the plaintiff's cost, though you're perfectly fine if you use the defendant's cost, is the P.I. standard. There's supposed to be irreparable harm for a P.I. There can't be irreparable harm if Collins could avoid that harm entirely by lowering its price, which it could have done. And it would have – in 78 percent of the cases, it would have been able to retain its customers. If it did that. So there is no irreparable harm at all here. And that's another reason to use the plaintiff's cost as well. And so another point is, as you said, Your Honor, whichever way you do it, it's economically the same. In fact, that was the testimony below, that there is no difference. And that's because this is nonexplicit and nonexplicit tying. There is a tremendous difference between those two things. And in nonexplicit tying, you have to turn around and – If you say that what's clearly legal is indistinguishable from what's being challenged here, that benefits you because it suggests that there's no basis for the claim. But it also cuts against you because it shows you could do – you're not hurt. All you have to do is structure your pricing that way while this case gets litigated. Is that true? I've shown you examples where Kodak is bound in when it wants to give individual discounts. Oh, except for that concern. So that's – I understand that. That is sort of – you have some sort of particular cases. So that is the reason why this continues to be a problem. And there is no split on using these costs as well. And one more point I want to make in my last 13 seconds is if no one was discounting further than we already saw in the record, 80% of the time, 80% of the time, Collins' prices were such so that the bundle in terms of purchasing Kodak's ink – excuse me, Kodak's refurbishment and Collins' ink, Collins would win that 80% of the time without – Thank you, Your Honor. Thank you, Counsel. Well, that was interesting. The case will be submitted. The other cases are on the briefs, so you can adjourn the hearing.